# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISON

| | | |
|---|---|---|
| ANTONIO ARNELO SMITH, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| *-versus-* | § | |
| | § | |
| **CITY OF VALDOSTA, GEORGIA**; | § | |
| **BILLY J. WHEELER**, in his Capacity | § | |
| as Sergeant of the Valdosta Police | § | **CIVIL ACTION FILE NO.:** |
| Department; **DOMINIC HENRY**, in his | § | |
| Capacity as a Patrolman; **PATRICK** | § | |
| **BARRETT**, in his Capacity as a | § | |
| Patrolman; **HUDSON DURDEN**, in his | § | |
| Capacity as a Patrolman; **SCOTT JAMES** | § | |
| **MATHESON**, in his Capacity as Mayor; | § | |
| **TIM CARROLL**, in his Capacity as | § | |
| Mayor Pro-Tem; **BEN NORTON**, in his | § | |
| Capacity as a Member of the City | § | |
| Council of Valdosta; **SANDRA** | § | |
| **TOOLEY**, in her Capacity as a Member | § | |
| of the City Council of Valdosta; | § | |
| **VIVIAN MILLER**, in her Capacity as a | § | |
| Member of the City Council of Valdosta; | § | **JURY TRIAL DEMANDED** |
| **TIM CARROLL**, in his Capacity as a | § | |
| Member of the City Council of Valdosta; | § | |
| **SONNY VICKERS**, in his Capacity as a | § | |
| Member of the City Council of Valdosta; | § | |
| capacity as a Member of the City; **ANDY** | § | |
| **GIBBS**, in his Capacity as a | § | |
| Member of the City Council of Valdosta; | § | |
| and **LESLIE MANAHAN**, in her | § | |
| Capacity as Chief of the Valdosta Police | § | |
| Department, | § | |
| | § | |
| *Defendants*. | § | |

## ORIGINAL COMPLAINT FOR DAMAGES

**COMES NOW** the Plaintiff, **ANTONIO ARNELO SMITH** (hereinafter "SMITH"), by and through the undersigned counsel, and files this, his ***Original Complaint for Damages*** against Defendants **City of Valdosta, Georgia; Billy Wheeler; Dominic Henry; Mayor Scott James Matheson; City Council Members: Ben Norton, Sandra Tooley, Tim Carroll, Vivian Miller, Sonny Vickers, Andy Gibbs and Eric Howard; and Chief Leslie Manahan** by stating as follows:

### INTRODUCTION

1.0     This is a civil rights action brought pursuant to 42 U.S.C. §1983, §1985 and §1988 alleging violations of the Eighth and Fourteenth Amendments to the United States and Georgia Constitutions.

1.1     Defendants' actions, omissions and deliberate indifference to violations of clearly established constitutional rights caused Mr. **SMITH** to suffer physical, mental and emotional injuries.

1.2     Mr. **SMITH** seeks compensatory and punitive damages.

### JURISDICTION AND VENUE

2.0     Jurisdiction is based upon 28 U.S.C. §1331 and §1343, and 42 U.S.C. §1983 and §1988. This Honorable Court has jurisdiction of the subject matter because this

action asserts claims arising under the Constitution, laws or treaties of the United States.

2.1    This Honorable Court has personal jurisdiction over Defendant **City of Valdosta, Georgia**, a municipality in Lowndes County organized and existing under the laws of the State of Georgia, and over Defendants **Billy J. Wheeler** and **Dominic Henry**, as agents of Defendant **City of Valdosta, Georgia**, and because they are domiciled in the State of Georgia and/or acted and caused injury within the City of Valdosta, Georgia.

2.2    This Honorable Court has personal jurisdiction over the City Council members of Defendant **City of Valdosta, Georgia**, *to wit*:

2.3    Mr. **SMITH** has satisfied the requirements of O.C.G.A. §36-33-5 by providing Defendant **City of Valdosta, Georgia** with *ante litem* notice within six (6) months of Mr. **SMITH's** claims, a copy of which is attached hereto as **Exhibit A** and made a part hereof by reference.

2.4    Venue is proper in the Middle District of Georgia under 28 U.S.C. §1391 because a substantial part of the events giving rise to Mr. **SMITH's** claims occurred in this district and at least one defendant resides within the Middle District of Georgia.

## **PARTIES**

3.0    Plaintiff **ANTONIO ARNELO SMITH** was, at all times relevant to this

**Complaint for Damages**, a United States citizen and resident of Valdosta, Lowndes County, Georgia. Mr. **SMITH** was an adult African American male at the time of the statutory and constitutional violations at issue.

3.1     Defendant **City of Valdosta, Georgia** ("City" or "City of Valdosta") is a municipality in Lowndes County organized and existing under the laws of the State of Georgia.

3.2     Defendant **Billy J. Wheeler** ("Wheeler") was a Sergeant with the Valdosta Police Department at all times relevant to the allegations in this **Complaint for Damages**. At all times relevant hereto, Defendant **Wheeler** acted under color of state law and was charged with providing for Mr. **SMITH's** safety and well-being and the protection of his civil rights. He may be served at 500 North Toombs Street, Valdosta, Georgia 31601.

3.3     Defendant **Dominic Henry** ("Henry") was an Officer with the Valdosta Police Department at all times relevant to the allegations in this **Complaint for Damages**. At all times relevant hereto, Defendant **Henry** acted under color of state law and was charged with providing for Mr. **SMITH's** safety and well-being and the protection of his civil rights. He may be served at 500 North Toombs Street, Valdosta, Georgia 31601.

3.4     Defendant **Patrick Barrett** ("Barrett") was an Officer with the Valdosta Police Department at all times relevant to the allegations in this **Complaint for**

**Damages**. At all times relevant hereto, Defendant **Barrett** acted under color of state law and was charged with providing for Mr. **SMITH's** safety and well-being and the protection of his civil rights. He may be served at 500 North Toombs Street, Valdosta, Georgia 31601.

3.5    Defendant **Hudson Durden** ("Durden") was an Officer with the Valdosta Police Department at all times relevant to the allegations in this **Complaint for Damages**. At all times relevant hereto, Defendant **Durden** acted under color of state law and was charged with providing for Mr. **SMITH's** safety and well-being and the protection of his civil rights. He may be served at 500 North Toombs Street, Valdosta, Georgia 31601.

3.6    The Valdosta Police Department is an agency within and operated by Defendant **City of Valdosta, Georgia**.

3.7    The Valdosta City Council consists of seven members (named as Co-Defendants) who served as the governing body of the Defendant **City of Valdosta, Georgia**.

3.8    Defendant **City of Valdosta, Georgia**, by and through its duly elected representatives and in their capacities as elected officials, specifically, **Scott James Matheson**, Mayor; **Tim Carroll**, City Council Member and Mayor Pro Tem; **Ben Norton**, City Council Member; **Sandra Tooley**, City Council Member; **Vivian**

**Miller**, City Council Member; **Sonny Vickers**, City Council Member; **Andy Gibbs**, City Council Member; and **Eric Howard**, City Council Member.

3.9     Defendant **Scott James Matheson** is the duly elected Mayor and is sued in his official capacity. Defendant **Matheson** may be served at 216 East Central Avenue, Valdosta, 31601.

3.10    Defendant **Tim Carroll** is a duly elected member of the City Council who also serves as Mayor Pro-Tem and is sued in his official capacity. Defendant **Carroll** may be served at 216 East Central Avenue, Valdosta, Georgia 31601.

3.11    Defendant **Ben Norton** is a duly elected member of the City Council and is sued in his official capacity. Defendant **Norton** may be served at 216 East Central Avenue, Valdosta, Georgia 31601.

3.12    Defendant **Sandra Tooley** is a duly elected member of the City Council and is sued in her official capacity. Defendant **Tooley** may be served at 216 East Central Avenue, Valdosta, Georgia 31601.

3.13    Defendant **Vivian Miller** is a duly elected member of the City Council and is sued in her official capacity. Defendant **Miller** may be served at 216 East Central Avenue, Valdosta, Georgia 31601.

3.14    Defendant **Sonny Vickers** is a duly elected member of the City Council and is sued in his official capacity. Defendant **Vickers** may be served at 216 East Central Avenue, Valdosta, Georgia 31601.

3.15   Defendant **Andy Gibbs** is a duly elected member of the City Council and is sued in his official capacity. Defendant **Gibbs** may be served at 216 East Central Avenue, Valdosta, Georgia 31601.

3.16   Defendant **Eric Howard** is a duly elected member of the City Council and is sued in his official capacity. Defendant **Howard** may be served at 216 East Central Avenue, Valdosta, Georgia 31601.

3.17   Defendant **Leslie Manahan** is a duly elected member of the City Council and is sued in her official capacity. Defendant **Manahan** may be served at 500 North Toombs Street, Valdosta, Georgia 31601.

## SUMMARY OF THE FACTS

4.0   On February 8, 2020, Valdosta Police Office Rachel Hinton responded to a non-emergency call at the Walgreens Pharmacy located at 2815 North Ashley Street. Upon arriving, Officer Hinton encountered an African American Male (Johnson) on the north side of the building.

4.1   Officer Hinton requested a background and warrants check on Mr. Johnson. Dispatch advised Officer Hinton that the male had an outstanding warrant. Dispatch made the announcement over the radio such that it could be heard by all officers.

4.2   Officer Hinton arrested Mr. Johnson and advised Defendant Dominic Henry, who had arrived on the scene, to check the west side of the building concerning an unknown male who had been asking customers for money and to determine if

Walgreens wanted a criminal trespass warrant issued for Mr. Johnson whom Officer Hinton had taken into custody.

4.3     While walking to the west side of the Walgreens building, Defendant Henry encountered a customer who advised that the male had walked south out of the parking lot. No other description of the male was provided to Defendant Henry. At or about this time, Defendant Henry observed a male walking south on North Ashley Street.

4.4     The individual observed by Defendant Henry walking south on North Ashley Street was south of the Red Roof Inn Hotel, approximately one hundred yards away from where Defendant Henry was located. Defendant Henry returned to his patrol vehicle and drove south on North Ashley Street.

4.5     At or near 2801 North Ashley Street, Defendant Henry made contact with an African American male later identified as Plaintiff **ANTONIO ARNELO SMITH**. Mr. **SMITH** provided his identification to Henry within two minutes of the stop.

4.6     The body camera video worn by Defendant Henry shows he stopped Mr. **SMITH** concerning "suspicious activity" – that being, panhandling at Walgreens.

4.7     Mr. **SMITH** explained that he was not involved in any suspicious activity but awaiting a wire transfer *via* Western Union from his sister. At this point, Defendant Henry asked Mr. **SMITH** for identification. Mr. **SMITH** complied and provided his identification but continued to question Defendant Henry about being stopped.

4.8    While the two were engaged in the above exchange, Defendant Wheeler stealthily walked up behind Mr. **SMITH**, grabbed his right arm, pulled it behind his (Smith) back and placed him in a bear hug. The video shows that Mr. **SMITH** was surprised and turned his head to see who grabbed him; however, at NO time prior to being grabbed and placed in a bear hug had either officer requested that Mr. **SMITH** put his hands behind his back as the police reports incorrectly state.

4.9    It was only after Sergeant Wheeler pulled Mr. **SMITH's** right arm behind his back and placed him (Smith) in a bear hug that the command – "place your arms behind your back" – is given. Moreover, this command was given by Defendant Wheeler, not Defendant Henry, as the video confirms.

4.10   Being placed in a bear hug by Officer Wheeler made it impossible for Mr. **SMITH** to place his arms behind his back, especially considering Defendant Wheeler had a tight bear hug on Mr. **SMITH** and appears to significantly outweigh him (Smith).

4.11   After the command – to place his hands behind his back – was repeated, Mr. **SMITH** repeatedly asked, "What are you doing?"

4.12   Unable to comply with the command due to having been placed in a bear hug, Defendant Wheeler picked Mr. **SMITH** up and slammed him to the ground. The video shows Defendant Wheeler turning Mr. **SMITH's** body so that as they are

falling to the ground, Defendant Wheeler's body would be protected from striking the ground by Mr. **SMITH's** body.

4.13   As a result of Mr. **SMITH** being slammed to the ground and being unable to use his arms to lessen the impact as he struck the ground, his left wrist was fractured. In fact, the video captured Mr. **SMITH** saying, "You broke my wrist." To this statement, Defendant Wheeler responded, "Yeah, he might be broke."

4.14   Despite realizing that Mr. **SMITH's** wrist or arm was broken, Defendant Wheeler continued to apply his handcuffs and straddled Mr. **SMITH** on the ground.

4.15   As Mr. **SMITH** cried and screamed in pain, Defendant Wheeler advised that Mr. **SMITH** was being arrested because of a warrant for his arrest. As captured on video, Defendant Henry corrected Defendant Wheeler and the other officers present regarding the outstanding warrant and informed them that the male who had the arrest warrant was the individual Officer Hinton stopped at the Walgreens Pharmacy.

4.16   In fact, Defendant Henry advised Defendant Wheeler and the other officers that he "had just got in contact with [**SMITH**]."

4.17   In the video, Defendant Henry stated to the other officers that it was Defendant Wheeler who asked Mr. **SMITH** to place his hands behind his back. This statement demonstrates that Defendant Wheeler's report is false wherein his report states that Defendant Henry asked Mr. **SMITH** to place his hands behind his back.

4.18   Moreover, Defendant Henry falsified his report by stating that as Defendant Wheeler approached Mr. **SMITH**, he (Wheeler) asked Mr. **SMITH** to place his hands behind his back and that **SMITH** refused to do so. No such directive is given to Mr. **SMITH** by Defendant Wheeler as the video confirms.

4.19   Defendant Henry had no reason to request that Mr. **SMITH** place his hands behind his back because he [Henry] was only attempting to gather information from Mr. **SMITH** concerning his identity and to determine if he was the suspicious person at Walgreens.

4.20   Considering Defendant Henry had no justifiable reason to place Mr. **SMITH** in handcuffs or to physically restrain him, Defendant Wheeler likewise had no justifiable reason to do so. Thus, Defendant Wheeler lacked any justifiable reason for placing Mr. **SMITH** in a bear hug and slamming him to the ground with such force as to fracture his left wrist when it had not been determined whether Mr. **SMITH** had committed any criminal offense or had any outstanding arrest warrants.

4.21   In fact, Defendant Wheeler asked Defendant Henry whether Walgreens want a "CT [criminal trespass warrant] issued against him [SMITH] as well", Defendant Henry responded, "I don't know. I had, I hadn't even asked them."

4.22 Based on the vague information and lack of any physical description concerning the individual who was panhandling at Walgreens, Defendant Henry did

not possess sufficient information to proceed beyond a first-tier encounter concerning Mr. **SMITH**.

4.23   Not only was Mr. **SMITH** not the person with the outstanding arrest warrant but he was also a person without any outstanding warrants as Dispatch advised Defendant Henry. Furthermore, at the time that Mr. **SMITH** was violently thrown to the ground, neither Defendant Henry nor Defendant Wheeler had determined if Mr. **SMITH** was the person who was panhandling at Walgreens.

4.24   As the video clearly demonstrates, Defendant Wheeler's facial expression and that of each officer present confirm the grave and serious civil rights violation committed by Defendant Wheeler in arresting and slamming Mr. **SMITH** to the ground.

4.25   As Defendant Henry further explained what led up to Mr. **SMITH** being slammed to the ground, he, *in essence*, did not know why Defendant Wheeler acted in the manner he did. As Defendant Henry spoke, each law enforcement officer on the scene looked in disbelief as to harsh treatment inflicted upon Mr. **SMITH** – another African American male viciously assaulted by a white male officer.

4.26   At no time during the events described herein did Defendant Henry attempt to protect Mr. **SMITH** from Defendant Wheeler's unconstitutional actions and the harsh treatment he (Smith) endured as Defendant Wheeler slammed Mr. **SMITH** to the ground.

4.27   As the video captured, Mr. **SMITH** literally cried like a baby as Defendant Wheeler treated him less than a human being.

4.28   Although an ambulance was called to the scene, Mr. **SMITH**, scared of what additional ill-treatment awaited him at the hands of the several law enforcement surrounding him, refused medical attention on the scene and walked away holding his broken left wrist.

4.29   Later that evening, Mr. **SMITH** presented himself at South Georgia Medical Center for treatment where it was confirmed that his wrist was fractured.

A.   **ANTONIO SMITH's Injuries**

5.0   Despite his obvious injuries, Mr. **SMITH** refused medical attention on the scene but presented himself at South Georgia Medical Center with a swollen and painful left arm and wrist.

5.1   According to the x-rays taken of Mr. **SMITH's** left wrist, he sustained distal radial and ulnar fractures. He was fitted with a sling, discharged on pain medication and referred to an orthopedic surgeon.

5.2   On March 4, 2020, Mr. **SMITH** returned to South Georgia Medical Center complaining of left wrist pain. The treating physician noted that the left forearm was swollen.

5.3   Upon discharge, Mr. **SMITH's** was fitted with a Sugar Tong splint and prescribed additional pain medication. He was also advised to follow up with an

orthopedic surgeon to address the distal and ulnar fractures.

5.4     On March 31, 2020, Mr. **SMITH** presented himself at Valdosta Orthopedic Associates complaining of left wrist pain and weakness. The left wrist fracture was confirmed by the attending orthopedic surgeon.

5.5     A referral was made for Mr. **SMITH** to see a specialist in Macon, Georgia; however, transportation was an issue for Mr. **SMTIH**.

5.6     Instead, Mr. **SMITH** saw an orthopedic with the Hughston Clinic on May 22, 2020. X-rays confirmed the left wrist fracture and demonstrated a "severely shortened distal radius fracture with intra-articular step-off on the lateral very prominent distal ulna with fibrous union ulnar styloid."

5.7     Because the wrist had healed abnormally and was not as painful, the orthopedic did not recommend any intervention unless the wrist became painful.

## B.     Sergeant Wheeler's Law Enforcement Background

6.0     Defendant Wheeler began his law enforcement career on December 22, 1997 with the Valdosta Police Department.

6.1     During his career, Defendant Wheeler's training history shows that he has taken a "use of force" or "use of deadly force" course each year for the past 23 years. He has also taken courses addressing "mental health" or "officer's responses to mental health" and "cultural awareness/diversity".

6.2    Since 2017, Defendant Wheeler has also received training in the Governor's Initiative – De-Escalation Options for Gaining Compliance.

## C.    Under{First-Tier Encounter Between SMITH and Officer Henry}

7.0    The stop in this case was a first-tier encounter between Officer Dominic Henry and Mr. **SMITH**.

7.1    As Mr. **SMITH** attempted to explain to Officer Henry why he was at the Walgreens Pharmacy, Defendant Wheeler walked up behind Mr. **SMITH**, grabbed his right arm and pulled it behind his back, placed him in a bear hug, lifted him off the ground, and slammed him (**SMITH**) to the ground.

7.2    Mr. **SMITH** is a small man, weighing approximately 150 pounds, and is narrow of frame and mild of manner. He appeared to be nothing other than a frail African American male confused as to why Officer Henry was stopping him.

7.3    When Officer Henry requested that Mr. **SMITH** produce his identification, he immediately complied.

7.4    Defendant Wheeler placing Mr. **SMITH** in a bear hug and detaining him was unnecessary and illegal, as there was no reason to believe Mr. **SMITH** had committed or was about to commit a crime, was armed or presented any kind of danger or threat to anyone. In fact, as Officer Henry states in the video, he was just checking Mr. **SMITH's** identification.

7.5     After grabbing Mr. **SMITH** without provocation, Defendant Wheeler restrained Mr. **SMITH's** arms and slammed **SMITH** face first into the ground.

7.6     This use of force was unnecessary and excessive.

7.7     As Mr. **SMITH** was slammed to the ground by Defendant Wheeler, **SMITH's** left wrist was fractured and immediately began to swell. Yet, Defendant Wheeler placed handcuffs on Mr. **SMITH** but acknowledged that his arm was likely broken.

7.8     It was Defendant Wheeler's intentions to arrest Mr. **SMITH**; however, once Officer Henry advised that Mr. **SMITH** was not the individual with the outstanding warrant, Defendant Wheeler eventually un-cuffed him.

7.9     Emergency personnel were called to the scene but Mr. **SMITH** refused medical attention.

7.10    From the moment Mr. **SMITH** was slammed to the ground until he walked away, he cried and screamed in agonizing pain.

## D. <u>Routine Suspicious Calls Are Received by the Valdosta Police Department</u>

8.0     Defendant City of Valdosta regularly receives calls from citizens who make complaints.

8.1     Such calls routinely include complaints about allegedly suspicious persons.

8.2     Many of these allegedly suspicious persons have committed no crime.

8.3    It is a routine part of the business of the Valdosta Police Department for its officers to respond to such complaints and make contact with persons who are the subject of the complaint.

8.4    In these routine situations, an officer's actions are restricted by clear constitutional rules. Here, Defendant Wheeler violated those rules whereas Mr. **SMITH** had committed no crime that would justify his arrest. Defendant Henry, the lead investigating officer on the scene was simply checking Mr. **SMITH's** identification and questioning him to determine if he was the suspicious person complained about at Walgreens.

8.5    Even if Mr. **SMITH** had been the suspicious person, the consequences would have been a criminal trespass warning to stay off Walgreens' premises.

8.6    Any crime *allegedly* committed by Mr. **SMITH**, which is denied, was "relatively minor in the context of [the Eleventh Circuit's] Fourth Amendment case law." ***Massie v. Cobb Cty., Georgia***, 255 F. Supp. 3d 1302, 1309 (N.D. Ga. 2017).

8.7    *First*, an officer is only permitted to conduct an investigatory stop if "the officer has a reasonable, articulable suspicion that criminal activity is afoot." ***Illinois v. Wardlow***, 528 U.S. 119, 123, (2000) (citing ***Terry v. Ohio***, 392 U.S. 1, 30 (1968)). "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making

the stop." *Id*. (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). In absence of

reasonable suspicion justifying the stop, a person approached by an officer "need not

answer any question put to him; indeed, he may decline to listen to the questions at

all and may go on his was." *Florida v. Royer*, 460 U.S. 491, 497-98 (1983) (citing

*Terry,* 392 U.S. at 32-33 (Harlan, J., concurring) and 34 (White, J. concurring)). An

individual "may not be detained even momentarily without reasonable, objective

grounds for doing so; and his refusal to listen or answer does not, without more,

furnish those grounds." *Id*. at 498 (citing *United States v. Mendenhall*, 446 U.S.

544, 556 (1980)).

8.8    *Second*, even if an officer has objective grounds for the stop, that does not

give the officer the right to detain and search the person. Even if Defendant Wheeler

believed Mr. **SMITH** was armed, a patdown for weapons must be "supported by a

reasonable belief [the searched individual is] armed and presently dangerous."

*United States v. Bonds*, 829 F.2d 1072, 1074 (11th Cir. 1987) (quoting *Ybarra v.*

*Illinois*, 444 U.S. 85, 93 (1980)). The officer must be "aware of specific facts which

would warrant a reasonable person to believe he was in danger." *Id*. (quoting *United*

*States v. Tharpe*, 536 F. 2d 1098, 1101 (5th Cir. 1976) (en banc)). "This standard

requires an objectively reasonable fear based upon specific facts regarding specific

individuals. A generalized suspicion or 'hunch' will not justify a frisk. It is this

standard, consistent with that stated in *Ybarra*, that governs the legitimacy of a frisk

as opposed to a stop." *Id*. at 1074-75; *see also* ***Terry***, 392 U.S. at 26 ("[T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe he is dealing with an armed and dangerous individual."); ***Bourgeois v. Peters****,* 387 F.3d 1303,1314 (11th Cir. 2004) ("*Terry* did away with the warrant and probable cause requirements for pat-down searches, but not an individualized suspicion requirement."); ***United States v. Rogers***, 131 Fed. Appx. 138, 139 (11th Cir. 2005) (suppressing evidence seized without a reasonable suspicion when officer testified "he had no idea whether [bulge] was a gun or knife or posed any threat to him, but thought it was a 'possibility'").

8.9     Officers conducting traffic stops are subject to similar constitutional restrictions.

8.10    It is highly predictable that constitutional violations will occur if officers are not trained and supervised regarding the limits on police officers' authority to make stops, including traffic stops, and to detain individuals for checking identification.

8.11    It is highly predictable that violations of these constitutional rules will lead to unnecessary physical confrontations, unlawful arrests (to justify the force used by the officer), and injuries to innocent citizens who oppose police officers who violate these constitutional rules.

8.12   Common charges used by officers in this situation are obstructing governmental operations, disorderly conduct, and resisting arrest.

8.13   It is well known to experienced police officers and to Defendant City of Valdosta's policymakers that officers, without proper training and supervision regarding the limits of their authority, are likely to violate the constitutional rules related to stops and weapons patdowns in an effort to be "proactive" in stopping crime and under the general mantra "better safe rather than sorry."

8.14   That is particularly true here because Defendant City of Valdosta evaluated officers' performance based in part on their statistics for "self-initiated" contacts, arrests, and tickets, thereby encouraging officers to be aggressive in their approaches to allegedly suspicious persons.

8.15   In fact, the policies and practices of many police departments regarding stops, including traffic stops, particularly involving persons of color, have come under scrutiny in recent years and especially in the past several months.

8.16   City policymakers knew to a moral certainty that Valdosta Police Department's officers would regularly confront the questions of (**i**) whether a stop was permissible and (**ii**) whether a patdown for weapons was justified.

8.17   Nevertheless, Defendant City policymakers, with deliberate indifference, failed to take steps to insure officers were trained and supervised regarding the constitutional limits of officers' authority in these areas.

8.18   As a result of this incident, neither Defendant City nor the Chief of Police took any disciplinary action towards Defendant Wheeler; and, no contact was made with Mr. **SMITH**.

8.19   Defendant City of Valdosta's lack of any disciplinary action regarding Defendant Wheeler and permitting him to remain on the City of Valdosta's payroll clearly indicates that said Defendant does not believe Defendant Wheeler violated any City policy or Standard Operating Procedure for the Valdosta Police Department.

8.20   The inaction on Defendant City of Valdosta's part constitutes a ratification of Defendant Wheeler's constitutional violations and makes Defendant City of Valdosta liable for Wheeler's constitutional violations under ***Monell v. Dept. of Social Services***, 436 U.S. 658 (1978).

8.21   The foregoing acts, omissions, and systemic failures and deficiencies are policies and customs of the Defendant City and caused officers to believe that constitutional violations would be tolerated and that complaints would not be honestly or properly investigated, with the foreseeable result that officers would violate the constitutional rights of Mr. **SMITH** and other similarly-situated citizens.

## <u>COUNT I</u> - 42 U.S.C. §1983 - ILLEGAL SEIZURE (Wheeler and City)

9.0   Mr. **SMITH** incorporates the above paragraphs as if fully stated herein.

9.1   On or about February 8, 2020, Defendant Wheeler, acting under color of law

within the meaning of 42 U.S.C. §1983, seized Mr. **SMITH** without reasonable suspicion or probable cause, thereby depriving Mr. **SMITH** of his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States in violation of 42 U.S.C. §1983. Specifically, Defendant Wheeler violated Mr. **SMITH's** right to be free from unlawful seizure.

9.2    Defendant acted with malice or reckless indifference to Mr. **SMITH's** constitutional rights.

9.3    Defendant City of Valdosta's policies and customs, including those regarding necessary training, stops, abusive charges, investigations of citizen complaints, and tolerance for constitutional violations in general, were the moving force behind Defendant Wheeler's violation of Mr. **SMITH's** Fourth Amendment rights.

9.4    As a result of the Defendants' conduct, Mr. **SMITH** has been caused to suffer physical and emotional injuries and damages and has been caused to incur medical bills and other expenses in an amount to be proven at trial.

## COUNT II - 42 U.S.C. §1983 - UNLAWFUL DETENTION (Wheeler and City)

10.0   Mr. **SMITH** incorporates the above paragraphs as if fully stated herein.

10.1   On or about February 8, 2020, Defendant Wheeler, acting under color of law within the meaning of 42 U.S.C. §1983, detained and arrested Mr. **SMITH** without probable cause or reasonable suspicion, thereby deriving Mr. **SMITH** of his rights under the Fourth and Fourteenth Amendments to the Constitution of the United

States in violation of 42 U.S.C. §1983. Specifically, Defendant Wheeler violated Mr. **SMITH's** right to be free from an unlawful detention and arrest.

10.2   Defendant Wheeler acted with malice or reckless indifference to Mr. **SMITH's** constitutional rights.

10.3   Defendant City's policies and customs, including those regarding necessary training, weapons patdowns, investigations of citizen complaints, and tolerance for constitutional violations in general, were the moving force behind Defendant Wheeler's violation of Mr. **SMITH's** Fourth Amendment rights.

10.4   As a result of the conduct of Defendants, Mr. **SMITH** has been caused to suffer physical and emotional injuries and damages and has been caused to incur medical bills and other expenses in an amount to be proven at trial.

## <u>COUNT III</u> - 42 U.S.C. §1983 - EXCESSIVE FORCE (Wheeler and City)

11.0   Mr. **SMITH** incorporates the above paragraphs as if fully stated herein.

11.1   On or about February 8, 2020, Defendant Wheeler, acting under color of law within the meaning of 42 U.S.C. §1983, assaulted and battered Mr. **SMITH**, thereby depriving Mr. **SMITH** of his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States in violation of 42 U.S.C. §1983. Specifically, he violated Mr. **SMITH's** right to be free from excessive force.

11.2   Defendant Wheeler acted with malice or reckless indifference to Mr. **SMITH's** constitutional rights.

11.3   Defendant Wheeler was required by law to use only an appropriate level of force to restrain Mr. **SMITH**, provided Mr. **SMITH** needed to be restrained.

11.4   Defendant Wheeler knew that using excessive force on Mr. **SMITH** was inappropriate and unconstitutional, as a violation of his rights against cruel and unusual punishment.

11.5   Nonetheless, Defendant Wheeler physically assaulted Mr. **SMITH** on February 8, 2020.

11.6   Defendant Wheeler forcibly placed Mr. **SMITH** in a bear hug, forcibly threw him to the ground, drove his face into the ground, and broke his left wrist.

11.7   Defendant Wheeler knowingly and deliberately used excessive force on Mr. **SMITH**, causing him serious and permanent injuries.

11.8   At the time Defendant Wheeler assaulted Mr. **SMITH**, he (Smith) did not pose a threat, had committed no crime and had no warrants for his arrest.

11.9   Defendant Wheeler exhibited deliberate indifference to the safety and well-being of Mr. **SMITH** and subjected Mr. **SMITH** to the unnecessary and wanton infliction of pain, suffering and violence, which constituted cruel and unusual punishment.

11.10 In so doing, Defendant Wheeler violated Mr. **SMITH's** constitutional rights.

11.11 Defendant City's policies and customs, including those regarding the investigation of citizen complaints and tolerance for constitutional violations in general, were the driving force behind Defendant Wheeler's violation of Mr. **SMITH's** Fourth Amendment rights.

11.12 As a result of the conduct of Defendants, Mr. **SMITH** has been caused to suffer physical and emotional injuries and damages and has been caused to incur medical bills and other expenses in an amount to be proven at trial.

11.13 As a direct and proximate result of Defendants' unlawful actions, Mr. **SMITH** suffered severe physical and emotional injuries and damages in an amount to be proven at trial.

## <u>COUNT IV</u>- STATE LAW – ASSAULT AND BATTERY/EXCESSIVE FORCE (Wheeler Only)

12.0   Mr. **SMITH** incorporates the above paragraphs as if fully stated herein.

12.1   On or about February 8, 2020, Defendant Wheeler assaulted and battered Mr. **SMITH** without a warrant and without probable cause or reasonable suspicion.

12.2   On or about February 8, 2020, Defendant Wheeler assaulted and battered and used excessive force on Mr. **SMITH.**

12.3   The conduct of Defendant Wheeler was either negligent, wanton, malicious, willful, or in bad faith.

12.4   As a result of the conduct of Defendant Wheeler, Mr. **SMITH** has been caused to suffer physical and emotional injuries and damages and has been caused to incur

medical bills and other expenses in an amount to be proven at trial.

## <u>COUNT V</u> – STATE LAW – FALSE ARREST/FALSE IMPRISONMENT
### (Wheeler Only)

13.0   Mr. **SMITH** incorporates the above paragraphs as if fully stated herein.

13.1   On or about February 8, 2020, Defendant Wheeler seized Mr. **SMITH**
without probable cause.

13.2   The conduct of Defendant Wheeler was either negligent, wanton, malicious,
willful, or in bad faith.

13.3   As a result of the conduct of Defendant Wheeler, Mr. **SMITH** has been caused
to suffer physical and emotional injuries and damages and has been caused to incur
medical bills and other expenses in an amount to be proven at trial.

## <u>COUNT VI</u> - STATE LAW - NEGLIGENT HIRING, TRAINING *and*
### SUPERVISION

14.0   Mr. **SMITH** incorporates the above paragraphs as if fully stated herein.

14.1   Defendants City of Valdosta and Chief Manahan were negligent in hiring and
training Defendants Wheeler and Henry.

14.2   Defendants City of Valdosta and Chief Manahan, under the authority of law,
owed a duty to Mr. SMITH to ensure his safety and well-being while in and under
their control and authority.

14.3   Defendants City of Valdosta and Chief Manahan failed to properly supervise
and train its officers. Defendants City of Valdosta and Chief Manahan also

negligently hired an officer that they knew or should have known were violent and aggressive.

14.4   Defendants City of Valdosta and Chief Manahan, at all times relevant hereto, had procedures and policies that allowed its officers to illegally detained and arrest suspects and use excessive force without proper training. The aforementioned policies and procedures caused Mr. **SMITH** to be deprived of rights secured by the United States Constitution, the Georgia Constitution, and other laws of Georgia.

14.5   Defendants City of Valdosta and Chief Manahan's policies and procedures fostered the environment that allowed its officers to assault, batter, and threaten the Mr. **SMITH**.

14.6   Defendants City of Valdosta and Chief Manahan's negligent hiring, retention, failure to properly train and supervise its officers deprived Mr. **SMITH** of his rights guaranteed by the Constitution and state laws. The Defendants acted with reckless and grave indifference to the impact and consequences of their actions within the meaning of 42 U.S.C. §1983, *et seq.*, and Eighth Amendment.

14.7   Mr. **SMITH** seeks damages to compensate him for the injuries sustained due to the violation of his Constitutional and civil rights.

14.8   As a result of the conduct of the Defendants, Mr. **SMITH** has been caused to suffer physical and emotional injuries and damages and has been caused to incur medical bills and other expenses in an amount to be proven at trial.

## <u>COUNT VII</u> – NEGLIGENT and INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

15.0   Mr. **SMITH** incorporates the above paragraphs as if fully stated herein.

15.1   As stated above, the actions of Defendants Wheeler and Henry, who are agents/employees of Defendant City of Valdosta employed through the Valdosta Police Department in connection with the aforementioned events of February 8, 2020 constitute intentional infliction of emotional distress for which Mr. **SMITH** may recover against Defendants.

15.2   Defendants caused Mr. **SMITH** emotional trauma that was outrageous and egregious. The Defendants inflicted emotional trauma on Mr. **SMITH** by hiring and retaining Defendants Wheeler and Henry, entrusting them to be officers with the Valdosta Police Department, and failing to train and supervise them properly; by Defendant Wheeler violating Mr. **SMITH's** statutory and constitutional rights; and by Defendant Henry's failure to protect Mr. **SMITH** from Defendant Wheeler's unconstitutional conduct.

15.3   The actions of Defendants in connection with the above-referenced series of events also constitute the negligent infliction of emotional distress upon Mr. **SMITH**.

**COUNT VIII - FAILURE TO INTERVENE UNDER 42 U.S.C. §1983**

16.0   Mr. **SMITH** incorporates the above paragraphs as if fully stated herein.

16.1   Defendant Wheeler, while acting under color of law, used excessive force on Mr. **SMITH**.

16.2   Defendant Henry was facing Defendant Wheeler, saw him walking up behind Mr. **SMITH**, and saw him grab, bear hug and throw Mr. **SMITH** to the ground. At the time Mr. **SMITH** was grabbed, he did not know Defendant Wheeler was behind him.

16.3   Defendant Henry had a realistic opportunity to prevent Defendant Wheeler from grabbing and slamming Mr. **SMITH** to the ground. It would have been as simple as holding out his hand or saying, "Stop." Defendant Henry did neither.

16.4   Defendant Henry failed to take reasonable steps to prevent Defendant Wheeler from using excessive force.

16.5   Defendant Henry's failure to act caused Mr. **SMITH's** serious and permanent injuries – injuries that were a reasonably foreseeable consequence of Defendant Wheeler's conduct and Defendant Henry's failure to act.

16.6   Defendant Henry was acting under color law at the time he failed to intervene. Defendant Henry had a duty to intervene, but failed to do the right thing.

16.7   Instead of intervening or de-escalating the situation, Defendant Henry exacerbated the situation by standing within arm's length of Mr. **SMITH** as Defendant Wheeler falsely arrested, assaulted, battered and violated Mr. **SMITH's** civil and constitutional rights.

## COUNT IX – CONSPIRACY TO VIOLATE SMITH'S RIGHTS

17.0   Mr. **SMITH** incorporates the above paragraphs as if fully stated herein.

17.1   Prior to Defendant Wheeler grabbing Mr. **SMITH** and placing him in a bear hug, there was no command given to Mr. **SMITH** to place his hands behind his back. It was only after Defendant Wheeler grabbed Mr. **SMITH's** right wrist and placed him in a bear hug is the command given.

17.3   According to Defendant Henry's Supplemental Report, he states the following:

> "While I was talking to Smith, Sergeant Billy Wheeler approached Smith and advised him to place his hands behind his back. Smith refused to place his hands behind his back as instructed. As Sergeant Billy Wheeler and I grabbed Smith to place his hands behind his back, Smith began to tense and pulled his arms forward."

17.4   As Defendant Wheeler approached Mr. **SMITH**, the video shows that Defendant Wheeler did not advise Mr. **SMITH** to place his hands behind his back and it does not show Defendant Henry grabbing Mr. **SMITH**. However, his report is written in such a manner as to create the false impression that a command was given and refused by Mr. **SMITH**, at which time he was grabbed by he (Henry) and Defendant Wheeler.

17.5   According to Defendant Wheeler's Supplemental Report, he states the following:

> "Based on what I observed and believing this person to have a warrant for his arrest, I grasped his right wrist. I felt Smith tense up and begin

> to pull away from me. At that time, I wrapped my arms around Smith
> in a "bear hug". Ptl Henry was telling Smith to place his hands behind
> his back. I adjusted my grasp of Smith to allow him to place his hands
> behind his back, but he continued to press his arms outward against
> mine."

17.6   As Defendant Wheeler approached Mr. **SMITH**, he (Wheeler) did not
announce his presence or identify himself. Instead, he stealthily came up behind Mr.
**SMITH**, grabbed his right wrist and pulled **SMITH's** arm behind his back. Unaware
of who grabbed his wrist, Mr. **SMITH** turned his head to see who grabbed him. As
he turned his head, Defendant Wheeler, without saying a word, immediately placed
Mr. **SMITH** in a bear hug.

17.7   After Defendant Wheeler learned (from Defendant Henry) that Mr. **SMITH**
was not the person with a warrant for his arrest, Wheeler told Defendant Henry that
he "thought this [SMITH] was the one with the warrant." Defendant Henry
responded,

> "No, that's what I was trying to figure out. No, there's two different
> people. That's why I was trying to figure out if I had missed something
> when you told him [SMITH] to put his hands behind his back."

17.8   Defendants Henry and Wheeler prepared false reports to create the scenario
that Mr. **SMITH** disobeyed a command to place his hands behind his back, at which
point Defendant Wheeler was justified in grabbing **SMITH's** wrist and placing him
in a bear hug.

17.9   Defendants Henry and Wheeler prepared false reports to create the impression that Wheeler grabbed Mr. **SMITH** because he (Smith) refused Henry's command to place his hands behind his back, knowing that no command had been given when **SMITH** was grabbed by the wrist and placed in a bear hug.

17.10 Further, the video does not show Mr. **SMITH** tensing up or trying to pull away from Defendant Wheeler as their (Henry and Wheeler) reports state. What the video shows is a scared black man pleading with a white officer not to hurt him.

17.11 Moreover, when Defendant Wheeler grabbed Mr. **SMITH's** right wrist and slammed him to the ground, Officers Patrick Barrett and Hudson Durden were walking up from behind Defendant Wheeler who had Mr. **SMITH** in a bear hug. Officers Barrett and Durden were approximately fifteen yards away. Therefore, neither could see exactly what Mr. **SMITH** was doing.

17.12 Despite being yards away and not having a clear view of Mr. **SMITH**, Officers Barrett and Durden state in their Supplemental Reports that they observed Mr. **SMITH** resisting detainment prior to Defendant Wheeler slamming him (SMITH) to the ground.

17.13 Officers Barrett and Durden also falsified their reports to help cover up Defendant Wheeler's violation of Mr. **SMITH's** civil and constitutional rights.

### QUALIFIED IMMUNITY

18.0   Mr. **SMITH** incorporates the above paragraphs as if fully stated herein.

18.1   Defendants are not entitled to "qualified immunity" because where (as here) the violation of Mr. **SMITH's** constitutional rights is obvious, that doctrine merely delays resolution of the case on the merits by engendering needless motions and pointless interlocutory appeals.

18.2   Defendants' use of force was excessive and unreasonable; therefore, Defendants are not entitled to "qualified immunity," because:

> **i.** There was no need for the application of force;
>
> **ii**. The force that was used far exceeded the force that was needed (which was none);
>
> **iii**. The injury inflicted was severe and permanent; and
>
> **iv**. The force was applied maliciously.

See ***Hadley v. Gutierrez***, 526 F.3d 1324, 1329 (11th Cir. 2008).

18.3   Defendants are not entitled to "qualified immunity" because their misconduct was "clearly established" as unconstitutional before February 8, 2020. See, e.g., ***Hadley***, 526 F.3d at 1330 (denying qualified immunity to officer who punched an arrestee in the stomach even though the arrestee was not struggling or resisting arrest); ***Lee v. Ferraro***, 284 F.3d 1188, 1194 (11th Cir. 2002) (finding violation of a clearly established right where officer slammed an arrestee's head on the back of the police vehicle while she was not resisting).

## PUNITIVE DAMAGES

19.0   Mr. **SMITH** incorporates the above paragraphs as if fully stated herein.

19.1   Defendants' actions were willful, deliberate, and in reckless disregard of Mr. **SMITH's** constitutional rights.

19.2   Defendants' actions show willful misconduct, malice, fraud, wantonness, oppression, and that entire want of care which would raise the presumption of conscious indifference to consequences.

19.3   Accordingly, punitive damages should be imposed against Defendants pursuant to O.C.G.A. §51-15-5.1 and other applicable laws to deter future violations of fundamental constitutional rights.

## ATTORNEY'S FEES

20.0   Mr. **SMITH** incorporates the above paragraphs as if fully stated herein.

20.1   Mr. **SMITH** herein was required to retain counsel to represent him in order to protect his rights.

20.2   Pursuant to 42 U.S.C. §1988, Mr. **SMITH** is entitled to reasonable attorney's fees and costs associated with bringing this action.

## DEMAND FOR TRIAL BY JURY

21.0   Plaintiff **SMITH** demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff **ANTONIO ARNELO SMITH** prays that this Honorable Court award the following relief from Defendants:

a.      An award of compensatory damages for each Count in this cause of action in favor of Plaintiff for all damages sustained as a result of Defendants' wrongdoing, and in an amount to be proven at trial, including interest thereon;

b.      An award of punitive damages in favor of Plaintiff against Defendants;

c.      An award of reasonable costs and expenses incurred in this action, including attorney fee and expert fees;

d.      That a jury trial be had on all triable issues; and

e.      Such other and further relief as this Honorable Court may deem just and proper.

**Respectfully submitted**, this the 19th day of June, 2020.

> **COPELAND, HAUGABROOK & WALKER**
> 104 East Adair Street
> Post Office Box 1810
> Valdosta, Georgia 31601
> Telephone: (229) 247-4617
> Facsimile: (229) 242-0109
> Email: cwlaw02@bellsouth.net
>
> */s/ Nathaniel Haugabrook, II*
> NATHANIEL HAUGABROOK, II
> State Bar No. 337970
>
> */s/ Roy W. Copeland*
> ROY W. COPELAND
> State Bar No. 186830
>
> */s/ Karla L. Walker*
> KARLA L. WALKER
> State Bar No. 732288

*/s/ Rodney Lawton*
RODNEY LAWTON
State Bar No. 935272

**Attorneys for Plaintiff**